22-984. Each side will have 15 minutes in this case. Good morning. May it please the Court. My name is Kari Hong. I'm with the Florence Project and I represent Petitioner Ellie Nelson Coto Delgado, whom I'll refer to as Mr. Coto, and I wish to reserve two minutes for rebuttal. I'm here to speak on behalf of the petitioner I'm going to discuss hearsay, sentencing, and then the CAT claim. So starting with hearsay, the BIA admitted that Alcarez Enriquez is the relevant precedent, but it claimed it need not follow this for three reasons. First, the BIA claimed that Mr. Coto did not object to the admission of the police report. This is not true. Well, Counsel, show me where it's not true. So I've looked at the record and I'll tell you what I've seen. What I've seen is that your client introduced the report. I understand why you're saying that doesn't matter, but he introduced the report. When he's talking about the report to the IJ, he is talking about different portions of the report, and then he says, these are the portions you should pay attention to and these are the portions you shouldn't because they're not reliable. The same as saying you couldn't see the murderer because the moon wasn't out, saying, well, you shouldn't look at this. And then I see nothing in the record where he objected in any way to the introduction of the police report. So point me in the record. Show me where I'm wrong. Yes. Your Honor, on page 373 is the last page of the pre-hearing or the reply of brief on eligibility submitted to the immigration court. Yes. And on page 373, it says the statements in the police report are not reliable for several reasons, and he mentioned that the police report said that the victim suffered only minor injuries and refused treatment. So he's talking about the parts of the police report that support his argument and the parts that don't. These aren't really reliable for these reasons. The same way you would tell a jury or a judge what in a document they should look at or not look at, but I don't see anything here where he says to the judge, this is inadmissible, you shouldn't admit it. And so I don't see any reason why, since that was never made to the immigration judge, that there's this type of constitutional violation that you've described. Well, Alcarez-Enriquez talks about, I mean, he testified about the parts of the report, in particular the minor injuries, and that the victim didn't have any injuries that required treatment. He testified to that, which is what Alcarez-Enriquez requires, where the victim did not. And this is relevant to the key point, which is that AR-91, the I.J. recites what he believes to be Mr. Cotto's testimony. And what's significant is at this, in just reciting his version, he, you know, classifies it as self-defense, and then the last sentence is the attacker turned and the loppers cut the attackers back. That is Respondent's testimony. This contradicts Mr. Cotto's testimony at 212 and 227, where he said that the loppers hit Mr. Herring, quote, on the flat side with the wood. And that is significant because Alcarez-Enriquez said it was air when there was only, in the words of Alcarez-Enriquez, only at least some measure of the aggregating facts of the promotion report were put in. So the I.J. should have sua sponte struck the report that was offered by the petitioner, or was it what the I.J. should have done, is sua sponte struck the parts of the report that the petitioner said, well, this doesn't really support what the government is arguing? Well, yes, Your Honor, because it's fundamentally unfair for the immigration court to have a rule that requires Mr. Cotto to have the burden of production, which it does, and then not let him contest any of that evidence, especially when it's a police report. Well, but there's a difference between contesting the evidence. Why wasn't the burden on the petitioner's lawyer to say, I object to your considering these portions of the report because they're hearsay, there's no witness, and it denies me my constitutional rights? Well, he didn't use those magic words, but his pre-hearing brief said that they were unreliable, which I think does that work. In particular, then he testified to his version, and there was no counter-testimony. And under Alcarez-Enriquez, it is a Sixth Amendment violation for the I.J. to credit these aggregating factors without that hearsay being placed in. Ms. Hong, Alcarez-Enriquez essentially notes the issue being whether the outcome of the proceeding may have been affected by the alleged violation, correct? Yes. And did not both the BIA and the I.J. note in terms of insulating their rulings that regardless of either narrative, either Cotto's testimony or the police report, it still suggests a serious offense? That's the issue, is it not, here, as to whether or not there is a serious offense, a particularly serious crime that's been committed. By either interpretation, it still notes that there is a serious crime, does it not? Well, yes, and the I.J. though said it was a serious crime on Mr. Cotto's testimony because he cut his back. Mr. Cotto didn't testify to cutting his back. He testified that it was the wood, not the blade, that hit him. So he said there was no injury. So the I.J. improperly brought in the aggravating factors from the victim's statement. Did he say there was no injury, or did he just not say anything about whether there was an injury? Well, he said it was a flat side of the wood, which then implied there was no injury. But the injury that was testified to was from the victim, and that's what the I.J. repeated. Although, counsel, when I'm looking at what your client's lawyer said to the I.J. at page 236, the report itself, the report, again, that he introduced and that he's quoting, reflects that the injuries were minor, and that's highlighted in the attachments to our reply that the officers indicated that there, I think it meant the injuries were minor, and that Derek Herring refused any medical treatments. That doesn't count for anything? Well, Your Honor, then that is consistent with Mr. Cotto's testimony. But minor is different than none, right? Well, he said it was consistent with a fistfight, which is what happened. Like, he did say there was a fistfight with his employee under his testimony. And so that is consistent with his version where the I.J. infected or, you know, tainted his finding by saying there was a cut on his back, which was not in Mr. Cotto's testimony. So in that way, it was a taint that happened with Alcaraz Enriquez, which is why remand is warranted. Are we able to take account of this picture of the loppers that were introduced, Exhibit 22 at 358, with regard to deciding what kind of a weapon your client used? Well, Your Honor, again, I think there would need to be admitted to evidence. I think the key point is just the testimony about that. But was there any objection to the picture? And the lopper diagram that's in the record? No. No, there is no admission to that issue. Now, if you disagree with me on that. Can I follow just with Judge Mark Bennett's question? If that's the case, then exactly how is he prejudiced by this report in terms of the here's the implications, your argument? How is Mr. Cotto ultimately prejudiced by this admission? Apart from the matter of objections not being made, how is there prejudice? Well, his version of the events is that it was basically self-defense, where the man was coming at him, he pushed him down, and then he got in a fight with an employee. So at that point he used sufficient force just to repel another attack. Although he pled guilty to a felony. To a battery. A felony, right? Correct. Right. But the facts were not a part of the plea. And so the question of whether it's a particularly serious crime is what the circumstances of the crime was, which has to be then under admissible evidence, which under his testimony is just a version of self-defense, which the IJ improperly included a cut to the back, which is not from Mr. Cotto's testimony. So it needs to be remanded for the question for the IJ, taking out the cut to the back, is this still serious or not? The standard review is abuse of discretion, which is simply was there improper evidence, and having the IJ say there was a cut on the back is improper evidence. Maybe the IJ will come up with the same version based on what Judge Bennett said about it, but maybe it won't, which is why that doubt has to go to the IJ to make the proper finding based on the proper evidence. Is there a notion that you could throw this and make sure that it only hits on the blunt side? Like, is it just luck that in his version that it only hit on the wood side? Well, again, Your Honor, I think that would be for the fact-finding below, for the IJ to ask that to see if there's a witness who would contest that. So that ambiguity has to go to the IJ because the IJ assumed there was an injury which only came in through the victim's testimony. If the Court disagrees with me, there's still the issue of sentencing, where here the IJ claimed Mr. Cotto did not receive the minimal sentence. Was that issue exhausted? Was there anything about that issue raised to the BIA? Well, on exhaustion, the BIA addressed that as the Francesco. But was there any argument made to the BIA about it? Yes, yes. The particular serious crime was exhausted to the BIA, both by his briefing and then by the IJ's findings. Now, what happened here is that the Court sentenced him, according to IJ, was two years and hard labor, which is at 90. And the BIA repeated that error by saying that the sentence included with hard labor. But under Louisiana law, at hard labor is a term of art which simply designates whether a wobbler is going to be a misdemeanor or a felony. And Congress said to deny protections to someone who is in danger, there has to be a high threshold that saying a conviction with over a five-year sentence is presumptively the type of crime that is particularly serious. Congress wanted more than just felonies to disqualify someone from withholding. And it looks at the BIA and IJ simply misunderstood Louisiana criminal procedure to assume that hard labor was a part of the sentence. I gather you're referring to what I guess are called Francesco factors, if I'm not mistaken, in terms of the 1982 BIA opinion. And in terms of the type of sentence imposed, Mr. Cotto did not raise those either with the IJ or the BIA. I mean, I don't see where there's been any exhaustion of administrative remedy there. I mean, I understand your key argument here has to be the hearsay. I mean, it seems to me your whole argument here obviously at the time allotted is the hearsay, because in terms of the three factors, nature of the conviction is not an issue here. It's the type of the sentence imposed. I don't see where there's been any exhaustion. It's totally unexhausted. So you really rise in terms of the withholding of removal, it rises or falls just on your hearsay argument, does it not? Well, Your Honor, Parada says that when the IJ addresses an issue, that that is exhausted. And to the extent that there is the general claim just saying that the type was, you know, that the type of sentence was a factor that the BIA affirmed, here we have to look at the specific argument that's before the court, and under Bayer that's permissible, that the type of sentence is a low-end concurrent suspended sentence that allowed him to immediately go into the community. That's contrary to the IJ and the BIA's finding that he was a danger to the community. If the state court had believed that, they could have put him away for four years more. So your view is that he did not need to raise that before the IJ specifically in that fashion? Not that specific argument. Well, just to clear house again in terms of what I think is really the real focus you want us to have is on the matter of the alleged hearsay. In terms of the issue of deferral of removal, it was in Cotto's initial notice of appeal, but he did not have it anywhere in his brief, did he, in terms of deferral of removal? Yes, Your Honor. He did not have it in his substantive brief. He did have it in his notice to appeal. His notice of appeal, I said. Correct. But not in the brief itself. Correct. But then under Obergon-Roca, the court says, quote, government briefs may exhaust issues for the petitioners, unquote. And here this is a very unique DHS brief where it wasn't simply summary affirmance, where they substantively not just went into the issues, but noticed that they were responding to respondents' issues. And that was at 33, where it says the DHS argues that the IJ reached the correct decision on all the issues respondent now appeals. I'm sorry. Just to follow up a bit, the opinion of this court in Abebe, if I'm pronouncing it correctly.  Versus Mulcazy. This court has specifically held that issues and arguments raised in a notice of appeal, but not a brief, are not exhausted. The BIA has the option. The BIA can elect. Abebe has its discretionary choice. And here the BIA noted that this was raised, cited to the IJ part or the part of the IJ decision, and said not that it forfeited it, not that he didn't raise it, but he said he did not meaningfully challenge. That is a standard. The IJ didn't say he didn't exhaust it. The IJ said he forfeited it. He said he didn't meaningfully challenge. And here when we have a situation where he raised three issues on his notice of appeal, the DHS took substantive efforts to reply to each. That is a very different factual situation than Abebe. And it's more akin to the Obergon-Rocha facts where the DHS brief did sufficiently put the BIA on notice as to what the issues were. So my follow-up question is, say we agree with you that the government's brief exhausted this issue. It still seems that what the board says in this footnote, too, is the board deems this issue waived, which I think is different than exhaustion. Like we might say it's exhausted, but then how do we get over the board saying, well, whether or not it's exhausted well enough for us to reach it, we're still going to consider that we don't have to reach it because we're going to call it waived. It seems like those are slightly different concepts. Well, I think the totality of the founding, the true waiver finding, which happened in Zara where the BIA says or in Abebe where it says we declined to reach it because it wasn't waived. Here they said they recognized that it was contested by the parties and then says waiver, but they acknowledge it wasn't waived, it wasn't meaningfully challenged. So I would argue that the totality of the situation shows that the BIA had notice of the issue. It's cited to the IJ portion. So is it that we should find that the BIA abused its discretion in finding this waived? No, but the BIA, and this is in Abebe, the BIA has the election whether it's going to procedurally default. But when it waives its procedural default, when it says there is no procedural default, this Court then has the, you know, can review the issue. But because there are no findings, remand is the proper word. But why wasn't it a situation where the BIA had the option of reaching the issue because it was exhausted or not reaching the issue because it wasn't in the brief, and they just used their discretion to say we're not going to reach this issue because it wasn't in the brief? Why not understand it that way? They could have done that. And if the DHS had not filed its brief, that would have been the correct reading. But because the DHS raised it and the BIA had the opportunity to weigh on the issue, and it did weigh on the issue by citing to the IJ brief, the BIA cannot have it both ways. They cannot say we are aware of the issue and we're not going to weigh in, or they can say this wasn't exhausted. But here they kind of said both, where we're aware of the issue, but we're going to say it's exhausted when, in fact, they have to choose one route over the other. Don't we sometimes do the same thing? What's your answer? Don't we sometimes do the same thing? Well, all I know is about this record, right, under administrative law that we're bound by what the agency did. So we should not, so even though they said waived, we should treat it as if they didn't really mean it or they didn't have the right to say it or they can't decide their cases this way? I'm a little confused about why they can't say because you didn't raise it in your brief, it's waived. There are two responses. First, under Chenery, the court does have different review over the agency decisions than it has over the civil or criminal proceedings. But to that question, SOTO v. SOTO, which is in the Rule 28J letter, that's a situation where the BIA said the sky is green and the court said, no, we're looking at the record and the sky is blue. That's what happened here, where the BIA said he didn't waive it, and, in fact, looking at the totality, the DHS brief did waive it. So in that respect, it wasn't abuse of discretion. It's that the BIA has to consider the issue that the DHS put before it, especially because it was responding to the notice of appeal where the three issues were properly before the agency. So what if, just a hypothetical, we'd had this government brief, and I don't even think there really are reply briefs usually before the BIA, but what if somehow there was a reply brief in the BIA where your client said, I don't really want to pursue the cat anymore? It would still be exhausted, probably, because the government brief talked about it, but why wouldn't it be waived? Like, isn't it possible to have exhaustion but also waiver? Well, Your Honor, what happens here, and this is a significant limiting factor, that this was a detained individual where the BIA requires briefs to happen concurrently and actually there is a rule against reply briefs, so you can't file a reply brief. So it's only opportunities what the parties put before the BIA at that point. They don't wait for reply briefs like they do in this court. Okay, so let's do it the other way. I mean, I understand there isn't really a reply brief, but so let's say the opening brief said, I'm no longer pursuing cat, but then the government spends the whole brief talking about cat. I think I would say it's exhausted because the government spent the whole brief talking about it, but if the opening brief had said, I don't really want this anymore, couldn't it be both exhausted and waived? Under that hypothetical, yes. And that's why this record is so critical that in its notice of appeal, that's what he focused on. And here the DHS didn't just go on a lark, but they said in response to those three issues in the notice of appeal, we're going to contest whether Salvadoran police who tortured him, in fact, are going to be considered to be sufficient evidence to grant cat or not. So there, because the DHS was engaging in the issues that Mr. Cotto had signaled that was going forward, this is the Tang case where it was concurrent briefing, so this was the DHS only opportunity to engage with the briefs. That is what a unique fact pattern put this in play, and so the BIA had a duty to address that, especially for this individual where he went back and within four days was beaten up by the police for imputed gang membership. So this isn't, you know, a hypothetical case. He had passed torture as soon as he went back to Salvador, and given the stakes, the benefit of the doubt should definitely go to Mr. Cotto. Thank you. So we've taken you over your time. I'll still give you two minutes for rebuttal, but let's hear from the government. Thank you, Your Honor. May it please the Court, Colin Tucker for the Attorney General. Review of the particularly serious crime determination is for abuse of discretion only and limited to examining whether the agency applied the correct legal standard. As the record leaves no doubt that the agency applied the correct legal standard here, the particularly serious crime determination is not abuse of discretion, and there are therefore no grounds for disturbing the denial of withholding of removal. Now, non-statutory, particularly serious crime determination, which is what we have here, the legal standard calls for the immigration judge to look to the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction. That's matter frantesque, as was earlier noted. Here there's no question that the immigration judge did those things. Matter frantesque was cited too, as was particular reference made to the nature of conviction, type of sentence imposed, circumstances, and underlying facts of the conviction. Now, to go further here would go beyond the court's jurisdictional limit. Petitioner's arguments on these points amount to basically quibbling over how the immigration judge weighed the various factors as opposed to an argument that the immigration judge failed to apply the correct legal standard. So I understand that your argument is that they didn't raise the issue about hard labor before the agency. But is there a type of error that could be so obvious that it is part of the Intesco factors, even if it wasn't raised? Like, say he had no sentence at all, and the agency said he had a long sentence. Would we just ignore that if the other side didn't raise it? I think it would be incumbent on the petitioner to raise that, Your Honor. Yes, that's what exhaustion calls for. The board needs to be put on notice of the issues that the petitioner, not DHS, the petitioner is raising. And to hold otherwise would be to completely misconstrue the exhaustion requirement. So usually, though, it's a claim that's exhausted. I mean, we do usually expect people to make the arguments they want to make. But the issue, the claim of whether this was a particular serious crime was raised. So it's really like a sub-argument that wasn't raised. And I don't know if we usually parse exhaustion that way. Maybe it's more of a waiver point. I'm not quite sure what we do with this, like, sub-argument issue. Well, Your Honor, I would look to Barron v. Ashcroft, which I believe states explicitly that issues and arguments must be raised before the board to be exhausted. And I would note also that from a policy standpoint, the point of the exhaustion requirement is to ensure that the board is in position to address the specific issues and arguments that need to be addressed. Now, from that perspective, merely saying, no, this isn't a particularly serious crime, the arguments that could arguably be raised as sub-arguments of that statement are almost limitless. And the board shouldn't be expected to parse every one of them. So, counsel, what exactly in the government's view does it mean for a Louisiana sentence that it's at hard labor? I don't think it's more complicated, Your Honor, than the state court judge in Louisiana has the ability to impose a sentence with or without hard labor. Here he chose to impose a sentence with hard labor, and therefore it was reasonable for the immigration judge to treat that as indicative of the seriousness of the offense. But what does hard labor mean? Your Honor, I can't speak to specifically what it means. All I know is that it's a sentencing factor that courts in Louisiana can use. And as my colleague noted, it's generally treated as the distinguishing factor between a misdemeanor and a felony. So we can conclude at the very least in this instance that the state court judge saw fit to explicitly state that this was, in fact, a felony and not a misdemeanor offense, which, again, would go to seriousness. So a few points were raised that I'd like to address, the first of which is that the petitioner did not at any time object to the admission of the police report in question. Petitioner, in a pre-hearing brief that was submitted months after petitioner filed the report, he raised questions as to whether certain aspects of the report were reliable, while simultaneously arguing that other aspects of the report should be treated as reliable. Now, whatever we can call that, it is plainly distinct from a formal objection to the admission of evidence. I would also point the court to pages 181 to 185 of the record. And during that portion of the – that's from the transcript. It's the portion of the hearing when the immigration judge reviewed evidentiary submissions and gave the parties the chance to raise objections, and no objections were raised by the petitioner at that time. I'd like also to point out that I want to reiterate this. It was stated in our brief petitioner was not required to submit, as my colleague stated, was not required to submit the report. The immigration court manual encourages the submission of documents that are pertinent to the conviction but does not require them. And I want to stress that even if the petitioner had treated that as an obligation, he was still in position to, for example, argue that here's this document that I produced, but it should not be admitted as evidence, or it should be admitted for identification purposes only, or if you're going to admit it, you should make an effort to produce the – prepare the documents so that they can be cross-examined. None of those things were done here. Isn't it – correct me if I'm wrong on this, but in terms of this whole issue of the report and the contentions as to the hearsay issue, we really need to come back to whether or not there's any prejudice, do we not? I think you can arrive at that point, Your Honor. If you conclude that the report was properly submitted, then I don't believe you need to go further. But even if – but on my point – I'm sorry, I'm just trying to – my thought here is that even if there is some legal issue with respect to the scope of the hearsay rule as to this document, the police report, it appears from the record here that both the BIA and the IJ address the fact that under either narrative, either CODOS testimony or the police report, in either way, it's a serious offense. I agree, Your Honor. I mean, the point is that it all comes down to is the matter of not whether it was self-defense or not, but there's no question in terms of the gravity of the situation and what the offense was and the underlying factors, and apart from the hearsay issue, we really have to get to the matter of whether or not there was any prejudice that results in terms of there being counter-narratives about what happened, but it was still clearly a serious offense. That's clear from the record, is it not? I agree, Your Honor. I think, as you put it earlier, that the immigration judge insulated his reliance on the report by finding that even if we accept the petitioner's version of events and not the report's version, I still view this as a particularly serious crime. And, of course, the immigration judge was within his discretion to do that, based on his summary of the petitioner's testimony. What do you do with your friend's argument that the immigration judge wrongly said that it is petitioner's testimony that established that the victim's back was cut by the loppers and that that wasn't in his testimony? I point you to page 92 of the record, Your Honor. The immigration judge did not say that even under the petitioner's version of the events, it's serious because the victim was cut. The immigration judge said that even under the petitioner's version of events, the crime is particularly serious because he attacked someone from behind with a dangerous and potentially deadly weapon. And that is absolutely true, whether you accept the petitioner's version of the events or the police reports. And so your argument is that the back being cut is just an irrelevant detail that wasn't really part of the analysis? Precisely, Your Honor. Yes. I think the overriding concern for the immigration judge here was the use of a dangerous or deadly weapon. And in either scenario, we clearly see the use of a dangerous or potentially deadly weapon. Moving on to the question of the sentencing factors, that argument, the arguments pertaining to those factors were not exhausted. To the extent the petitioner suggests the board sui sponte address those issues, the board stated the immigration judge correctly considered the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction. Now, that's a general statement confirming the immigration judge applied the correct legal standard. From an exhaustion standpoint, it can't be read to raise or call for the addressing of the specific sentencing arguments that petitioner raised for the first time in the opening brief. If there are no other questions... May I ask about the CAT? Why isn't the CAT claim exhausted by the government's brief? A beat is really straightforward here, Your Honor. Issues raised in a notice of appeal are exhausted only if, where there's a subsequent brief, they are raised in the appealing party's brief, and they weren't here. But it doesn't address... Isn't this a different factual situation, though? I mean, I don't think that case contemplated the situation where the government addressed the issue, even though the petitioner didn't. Your Honor, the government addressed the issue here in a motion for summary affirmance that was filed prior to petitioner filing the brief. The board looks, based on this court's jurisprudence, the board looks to the appealing party's brief to determine which issues it needs to address. So the board was more than within its discretion here to simply say, Petitioner clearly is not arguing CAT protection, therefore we deem it waived and need not address it. Was it exhausted, though, and just then waived? I don't believe that it was, Your Honor. I think that for an issue to be exhausted, the party who is actually pursuing the appeal has to raise an argument. The fact that DHS mentioned it, I can tell you at the very least, the court has issued many decisions regarding the exhaustion doctrine. I'm aware of none that suggests that DHS can independently, as the appellee, exhaust an issue by raising it in the filing. I guess as I read Abebe, even if Mr. Cotto can be said to have exhausted the CAT claim, he clearly forfeited it because he failed to present any meaningful arguments in the brief, did he not? Even if it's not exhaustion, it's been forfeited, was it not? Your Honor, in this case, I'm not really sure what the distinction between forfeiting and failing to exhaust would be. In both instances, it's a failure to raise issues and put the board on notice of the need to address them. I suppose exhaustion is more a doctrine that's relevant to this court in terms of it's a statute that governs the court's jurisdiction. Yes. If it's not exhausted, we have no jurisdiction. But if it's exhausted but waived, we would be looking, I think, at what the board did under an abusive discretion standard. I mean, the bottom line, it might not matter, but I think it doctrinally makes a difference. Doctrinally, Your Honor, yes, generally speaking. But in this case, I would agree the government's position is it simply does not matter. And as I read your brief, really the only argument you made is that it's not exhausted. So if we disagree with you about that, did you forfeit any waiver or forfeiture? Yes, Your Honor, I think that the exhaustion argument here is sufficiently straightforward that I'm content to say that we in our brief will have waived that issue on the merits. I'm not sure. Maybe you didn't understand my question. So my question is, your brief argued that this issue about CAT is not exhausted. Correct. Say we disagree with you about that and think that the government's brief did exhaust the issue. So then the question is whether Petitioner waived an issue that was before the board but waived it or forfeited it. I'm wondering what we do now with your brief because your brief to us does not say this issue was forfeited. Instead, it only says it's not exhausted. Well, again, Your Honor, I would fall back on the argument that the distinction here between exhaustion and forfeiture, there is none. If we want to say that Petitioner waived the issue before the board, then it follows that the board, by not sui sponte addressing the issue, that means that it was not exhausted. I have no further questions. I don't think we have any other questions. So if you have more things to address, please go ahead. But otherwise, we could wrap up. I can wrap up, Your Honor. For the reasons stated here today and in the Respondents' Brief, the government requests that the petition for review be dismissed in part and denied in part. Thank you. Thank you. So we have two minutes for rebuttal. Thank you. I have two points. First, on the exhaustion about the Behr case. I was the attorney on that case, and I can confirm that at the BIA, all that was said in the BIA brief was that the nature of conviction under Francescu was at issue. The BIA said that nature of conviction was exhausted, and before this court, the more specific argument that I brought forward was that a status offense cannot be a particularly serious crime. The court said that was adequate for exhaustion. In parallel form here, type of sentence was in the brief, type of sentence was addressed by the BIA, so that permits then this court to entertain the specific argument that at-heart labor is different than what the IJ presumed to be with hard labor, which is a much more serious type of matter. And the LA Code has four specific definitions, which is in the Manzik case, defining what is a felony, which is simply at-heart labor. The second point, on the exhaustion, I think the contrast between Obergon-Roca and Zara is a helpful guide for this court to look at, where Zara, which is a published case, said in principle the INS brief can exhaust an issue, but looking at that particular INS brief, it simply asks for summary affirmance. And so they said we did not — they did actually not put up onto — put the BIA in notice of the issues that it's now bringing before the Ninth Circuit. That's in contrast to the Obergon-Roca, where they said, yes, the DHS briefing can do that work, and there the DHS brief simply mentioned the false claim report and then referred to the IJ decision. The DHS brief here did substantially more work than Obergon-Roca, which is respectfully like to submit that exhaustion is met. And so then the remand — or the remedy would be for remand for actual findings. Thank you. Thank you, both sides, for the helpful arguments. This case is submitted. Thank you. And we are adjourned for the day. All rise.
judges: FRIEDLAND, BENNETT, Bennett